865 F.2d 258
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
George C. LESTER, Plaintiff-Appellee,
James E. Sparks, Plaintiff-Appellant,
v.
The ARMSTRONG RUBBER COMPANY, Defendant-Appellant, Defendant-Appellee.
 Nos. 87-6128, 88-5186 and 88-5276.
 United States Court of Appeals, Sixth Circuit.
 Dec. 28, 1988.
 
 Before KEITH, KENNEDY and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 George C. Lester and James E. Sparks brought separate actions which were tried before different judges against Armstrong Rubber Company (Armstrong) under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 612 et seq. Lester won a bench judgment, and Armstrong appealed. The District Court ruled for Armstrong in Sparks' action, and Sparks appealed. The two appeals were consolidated. Because we find that neither trial judges' factual findings were clearly erroneous, we AFFIRM both judgments.
 
 
 2
 Lester and Sparks worked as supervisors in the first stage of radial tire production in Armstrong's Madison, Tennessee plant. During the first stage of production, the rubber tire carcass is placed between the jaws of a splice press. Sticking between the carcass and the press was common problem. Weather conditions in the summer of 1983 exacerbated this problem. Lester and Sparks sought the advice of their superiors, and were told to "work [their] way out of it." Sparks experimented with silicone as an antisticking agent and found the results satisfactory. Sparks instructed his tire builders to apply silicone to the lower jaw of the press. He also told Lester that the substance worked perfectly, and Lester and his builders also began using silicone. If properly applied to the lower jaw of the press, silicone causes no damage. However, silicone on the top of the carcass will prevent the tire components from adhering properly. Unfortunately, one of Sparks' builders was sloppy in applying silicone and produced a batch of defective tires, which had to be repaired. When management inquired about the defective tires, Lester and Sparks acknowledged that they had instructed their builders to use silicone. Sparks was immediately discharged, and Lester was compelled to retire under threat of termination. Lester was 60 years of age at the time of his discharge; Sparks was 43.
 
 
 3
 Lester and Sparks contend that they were discharged not because they authorized the use of silicone, but because of their age. In evaluating an ADEA claim, one of the steps in determining whether the plaintiff has made out a prima facie case in a discharge case is whether he was replaced by a younger person. Chappell v. GTE Products Corp., 803 F.2d 261, 265-66 (6th Cir.1986) (citations omitted).
 
 
 4
 Armstrong concedes that Sparks made out a prima facie case. However, the company asserts that the evidence failed to show that Lester was replaced by a younger person. But Armstrong's own records, adduced at trial, indicate that between 1981 and 1987, all of the plant's supervisors were younger than Lester. Therefore, his replacement necessarily was younger, and the District Court did not err in finding that Lester had established a prima facie case of age discrimination.
 
 
 5
 Once the plaintiff proves a prima facie case, the burden shifts to the employer to produce evidence of a nondiscriminatory reason for the discharge. Chappell, 803 F.2d at 266. If the employer meets its burden of production, then the plaintiff must prove by a preponderance of the evidence that the employer's reason is a pretext for age discrimination. Davis v. Combustion Eng'g, 742 F.2d 916, 921 (6th Cir.1984). Armstrong produced evidence that it fired Lester and Sparks for authorizing their builders to introduce a dangerous substance into the first stage of tire production. Thus, the pivotal issue in both cases is whether the plaintiff proved that this explanation was a pretext for age discrimination. Lester prevailed on this issue below; Sparks did not.
 
 
 6
 On appeal, findings by the trier of fact must be upheld unless they are clearly erroneous. West v. Fred Wright Constr. Co., 756 F.2d 31, 34 (6th Cir.1985). This Court may not reverse the decision below simply because it "might give the facts another construction, resolve the ambiguities differently or reach a conclusion different from that of the district court." Id.
 
 
 7
 Turning first to Lester's case, we conclude the District Court did not clearly err in finding that Armstrong's explanation for Lester's firing was a pretext for age discrimination. The company points out that silicone can cause tire defects if improperly applied, risking lives and exposing the company to liability. Firing Lester, Armstrong argues, was a legitimate if harsh response to the unauthorized use of a dangerous substance. However, several factors diminish the strength of this explanation and support the trial court's finding that it was pretextual. While the company characterizes Lester's use of silicone as unauthorized, it was only unauthorized in the sense that no formal written specification approved the use of silicone on the splice press. But the same was true of many common procedure in the production process. Silicone had long been used in the curing department, although this use was not approved of in the company's written specifications. Nor do the specifications mention sterate, fish oil, soap, or any of the other substances commonly used as antisticking agents in the first stage of tire building. While silicone can impair tire adhesion, so can these substances if improperly applied. Lester was never warned not to experiment with silicone. On the contrary, he was told to find a solution to the sticking problem. Finally, the only losses suffered by Armstrong were caused by one of Sparks' builders--who was not fired--not Lester or any of his workers.
 
 
 8
 The trial court's conclusion that Armstrong's justification for discharging Lester was pretextual did not rely only on the irrationality of firing him for the silicone experiment; it was reinforced by direct evidence of age discrimination. The District Court credited James Masiongale's testimony that Production Manager Custer told him that Armstrong had a long range plan to weed-out older employees through poor evaluations. From 1973 until 1983, Lester had always received outstanding job performance ratings. But his last evaluation by Clay James, made one month prior to his termination, was much lower: "adequate." Subsequent to the 1983 evaluation, James told Lester that at 60 he was growing too old to work the production line, and said he was considering moving Lester to the "chip board" (quality control)--a less desirable position viewed as punishment by employees. Lester responded that he would rather be fired than move to the chip board. A short time later, he was terminated. Armstrong protests that none of this is relevant, since Lester was not removed through low evaluations. But this evidence was probative of a plan to remove older employees. If the company's goal was to remove older employees, the district judge was entitled to believe that it would use means other than poor evaluations to achieve it.
 
 
 9
 In light of the direct evidence of age discrimination and the weaknesses in Armstrong's explanation of Lester's termination, we conclude the District Court did not clearly err in finding for Lester.
 
 
 10
 While Sparks' discharge arose out of the same incident, we conclude that the District Court did not clearly err in rejecting his allegations of age discrimination. In close cases, the clearly erroneous standard of review will sometimes mandate the affirmance ?? ostensibly contradictory findings by different triers of fact. Moreover, Sparks' claim of age discrimination is weaker than Lester's in several respects. Unlike Lester, Sparks had not been subjected to any overt acts of discrimination due to his age. While the District Court in Sparks' case also credited Masiongale's testimony about the company's plan to eliminate older employees, the district judge was entitled to conclude that it was unlikely that Armstrong's management would have considered Sparks an "older" employee at 43. Further, Armstrong's explanation for the firings is somewhat stronger in Sparks' case, since Sparks initiated the use of silicone in the first stage of tire production and was responsible for the builder who produced the defective tires. It may well have been harsh and unreasonable for Armstrong to fire an exemplary employee like Sparks for attempting to solve a problem on the company's behalf--especially given the fact that the company had approved of an adopted earlier experiments by Sparks. But the ADEA is not a general wrongful discharge statute; it condemns only age discrimination. In light of the paucity of the evidence that Sparks' firing was motivated by his age, we cannot say the decision of the District Court was clearly erroneous.
 
 
 11
 The decisions below are AFFIRMED.